# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3672

_____

Autumn DeCrow

*Plaintiff - Appellant*

v.

North Dakota Workforce Safety & Insurance Fund

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: February 8, 2017
Filed: July 31, 2017

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Autumn DeCrow ("DeCrow") is the widow of Deke DeCrow, a Colorado resident killed in a traffic accident while working in North Dakota. DeCrow filed for workers' compensation death benefits from the North Dakota Workforce Safety and Insurance Fund ("WSI") and from the Colorado Division of Workers' Compensation ("DWC"). DeCrow alleges that after Deke's employer contested her Colorado claim, denying workers' compensation liability, the Colorado DWC sent her a notice of her

right to a hearing on the Colorado claim. In July 2012, WSI granted DeCrow's claim for North Dakota workers' compensation death benefits.

In December 2014, DeCrow filed this declaratory judgment action in the United States District Court for the District of North Dakota, seeking a declaration that N.D.C.C. § 65-05-05(2) "is invalid and unenforceable" under the Due Process, Equal Protection, and Full Faith and Credit Clauses of the United States Constitution and therefore cannot be applied to suspend her North Dakota benefits while she seeks a hearing on her claim for Colorado benefits. The district court[1] granted WSI's motion for judgment on the pleadings, dismissing the substantive due process and the equal protection claims because there was a rational basis for N.D.C.C. § 65-05-05(2),[2] and dismissing the Full Faith and Credit Clause claim because the statute "merely purports to define the legal rights of a recipient of WSI benefits in North Dakota." DeCrow appeals the dismissal of all three claims. Reviewing *de novo*, we affirm. See Huffman v. Credit Union of Tex., 758 F.3d 963, 965 (8th Cir. 2014) (standard of review).

## I. The North Dakota and Colorado Statutory Regimes

"The North Dakota workmen's compensation statutes provide an exclusive, compulsory, and comprehensive program designed to compensate workers for injuries received in the course of their employment. . . . [T]he Bureau [WSI's predecessor] serves as both the administrator and the insurance carrier." U.S. Fid. & Guar. Co. v. N.D. Workmen's Comp. Bureau, 275 N.W.2d 618, 620 (N.D. 1979). The provision at issue, N.D.C.C. § 65-05-05, "was intended to avoid a duplication of benefits [and]

---

[1]The Honorable Daniel L. Hovland, Chief Judge of the United States District Court for the District of North Dakota.

[2]The district court also dismissed DeCrow's procedural due process claim for lack of standing, a claim that DeCrow does not pursue on appeal.

to compel the claimant to seek his remedy in one jurisdiction." Id. at 622 (quotation omitted). In 1979, § 65-05-05 simply provided, "Where the injury is sustained outside the state of North Dakota and compensation is claimed *and received* through some other state act no compensation shall be allowed under this title." Id. at 621 (emphasis added). The constitutionality of that provision was well established -- "the Full Faith and Credit Clause does not require a State to substitute for its own statute, applicable to persons and events within it, the statute of another State reflecting a conflicting and opposed policy." Carroll v. Lanza, 349 U.S. 408, 412 (1955), citing Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n, 306 U.S. 493, 502 (1939).

In this case, DeCrow had claimed but not received Colorado workers' compensation benefits when WSI granted her claim for North Dakota benefits. N.D.C.C. § 65-05-05 as subsequently amended makes her nonetheless subject to its exclusivity principle. Subdivision 2 of the statute now provides:

> 2. If . . . any person seeking benefits because of the death of an employee, applies for benefits from another state for the same injury, [WSI] will suspend all future benefits pending resolution of the application. If . . . any person seeking benefits because of the death of an employee, is determined to be eligible for benefits through some other state act . . ., no further compensation may be allowed under this title and . . . any person seeking benefits because of the death of an employee, must reimburse [WSI] for the entire amount of benefits paid.

N.D.C.C. § 65-05-05(2). DeCrow alleges that the suspension provision effectively prevents her from seeking benefits under Colorado law, because she is financially dependent on receiving her North Dakota benefits.

Colorado's workers' compensation statute did not adopt North Dakota's strict exclusivity principle. Rather, Colorado provides "supplemental" benefits to an eligible claimant who is receiving benefits for the same loss from another State:

-3-

In cases where it is determined that periodic death benefits granted by . . . a workers' compensation act of another state . . . are payable to an individual and the individual's dependents, the aggregate benefits payable for death pursuant to this section shall be reduced, but not below zero, by an amount equal to fifty percent of such periodic benefits.

C.R.S. § 8-42-114.

Full faith and credit principles allow each State to enforce its own statutory policy. See, e.g., Franchise Tax Bd. of Cal. v. Hyatt, 538 U.S. 488, 496 (2003) (a State need not "substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate"). Thus, Colorado need not apply N.D.C.C. § 65-05-05 if the DWC determines after a hearing that DeCrow is entitled to Colorado benefits, and a North Dakota judgment could not enjoin or preclude Colorado from awarding supplemental benefits. That was the import of Thomas v. Washington Gas Light Co., 448 U.S. 261 (1980), the badly-fractured Supreme Court decision on which DeCrow principally relies.

The central question in this case, one of first impression, is whether North Dakota may enforce the suspend-and-reimburse provisions of N.D.C.C. § 65-05-05(2) when the practical effect is to preclude DeCrow from receiving supplemental benefits that Colorado is constitutionally entitled to provide. We reject DeCrow's attempt to frame the case as limited to the suspension provision. Her Complaint seeks a declaration that § 65-05-05(2) "is invalid and unenforceable," which includes both the suspension and reimbursement provisions. More importantly, if North Dakota may constitutionally require reimbursement, the suspension provision is far less subject to *substantive* challenge. So both provisions are at issue under all three constitutional claims. Like DeCrow's Complaint, we will first address the Equal Protection and Substantive Due Process claims.

-4-

## II. Equal Protection and Due Process Claims

The Equal Protection Clause "protects citizens from arbitrary or irrational state action. . . . Absent a 'suspect classification' such as race, courts review legislative actions under the highly deferential 'rational basis' standard." Batra v. Bd. of Regents of Univ. of Neb., 79 F.3d 717, 721 (8th Cir. 1996) (quotation omitted); see FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). "A rational basis that survives equal protection scrutiny also satisfies substantive due process analysis." Kansas City Taxi Cab Drivers Ass'n, LLC v. City of Kansas City, Mo., 742 F.3d 807, 809 (8th Cir. 2013) (quotation omitted).[3] DeCrow concedes that her equal protection and substantive due process claims are governed by the highly deferential rational basis standard.

DeCrow's briefs on appeal assume that the reimbursement provision in N.D.C.C. § 65-05-05(2) is enforceable; indeed, her attack on the suspension provision is based on that assumption. However, when questioned at oral argument, counsel simply stated that the reimbursement provision was "not ripe" because Colorado has not awarded benefits. So we assume the briefs' assumption was not a concession that only the suspension provision "is invalid and unenforceable." Looking at the merits of the equal protection and substantive due process issues, we conclude that the reimbursement provision readily passes rational basis scrutiny.

The Supreme Court of North Dakota has explained that the State's statutory exclusivity policy "was intended to avoid a duplication of benefits [and] to compel the claimant to seek his remedy in one jurisdiction." U.S. Fid. & Guar., 275 N.W.2d at 622. These purposes further North Dakota's "valid interest in placing a limit on

---

[3]Because WSI concedes the issue, we assume DeCrow has a due process-protected property interest in her North Dakota workers' compensation benefits. See, e.g., Neal v. Fields, 429 F.3d 1165, 1167 (8th Cir. 2005).

the potential liability of companies that transact business within its borders." Thomas, 448 U.S. at 276 (plurality opinion).  This alone satisfies rational basis review, as the statute treats all similarly situated North Dakota claimants alike and DeCrow alleges neither a suspect classification nor infringement of fundamental rights.  In 1993, no doubt recognizing that another State need not apply North Dakota's exclusivity principle if inconsistent with its own workers' compensation statute, the North Dakota Legislature amended § 65-05-05 to add the suspension and reimbursement provisions here at issue.  As amended, § 65-05-05(2) strengthens North Dakota's policy by discouraging claimants from seeking duplicate or supplemental benefits in a second State after obtaining North Dakota benefits.  Even if that indirect effect conflicts with the policies of other States like Colorado, it is consistent with North Dakota's valid policy and thus survives rational basis review.

Having established that § 65-05-05(2)'s reimbursement provision is not subject to equal protection or substantive due process challenge, DeCrow's separate attack on the suspension provision requires little discussion.  DeCrow argues this provision lacks a rational basis because the suspension is based on an application for supplemental benefits, not the award of supplemental benefits.  The suspension provision deprives her of essential benefits during the application process, DeCrow contends, yet it is unnecessary because § 65-05-05(2) will bar duplicate benefits if she is ultimately determined to be eligible for supplemental benefits from Colorado.  This contention is unpersuasive.  As the district court noted, "North Dakota's decision to suspend benefits pending a resolution of an application in another state reduces the amount of benefits WSI would have to attempt to recover [under the reimbursement provision] if the other state grants the application."  The cost and difficulty of recovering benefits paid during the suspension period are a rational basis for the suspension provision.  In addition, suspending benefits as soon as a claimant seeks benefits elsewhere encourages claimants to decide at the outset whether they will seek North Dakota benefits or instead seek benefits elsewhere, which reduces administrative costs and may limit employers' liability.

-6-

### III. Full Faith and Credit Claim.

DeCrow's primary argument on appeal is that the suspension provision in N.D.C.C. § 65-05-05(2) violates North Dakota's constitutional obligation to provide full faith and credit to Colorado's death benefits provision, C.R.S. § 8-42-114.[4] DeCrow alleges that North Dakota's suspension provision effectively prevents her from seeking supplemental benefits under Colorado law. We assume the truth of that allegation in reviewing the grant of judgment on the pleadings, but we fail to see how it establishes a violation of the Full Faith and Credit Clause.

Relying on the plurality opinion in Thomas, DeCrow argues that "North Dakota cannot impose its desire to have its compensation act be the exclusive remedy for individuals like Ms. DeCrow who have a claim for benefits in another state." In Thomas, after obtaining a workers' compensation award under a Virginia statute that precluded "any other recovery . . . on account of the injury," the claimant sought supplemental benefits from the District of Columbia. The employer argued that the Full Faith and Credit Clause required District of Columbia courts to give effect to the Virginia exclusivity provision. The Supreme Court disagreed, though there was no majority opinion. The plurality reasoned that the Full Faith and Credit Clause did not compel the second State -- the District of Columbia -- to enforce the first State's exclusivity decree instead of its own more generous compensation policy, reaffirming the principle that a State need not "subordinate its own compensation policies to those of another State." 448 U.S. at 279.

Here, relying on a Colorado statute, DeCrow seeks to prevent North Dakota from applying N.D.C.C. § 65-05-05(2), a provision of North Dakota law, to

---

[4]Article IV, § 1 of the Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." See also 28 U.S.C. § 1738.

DeCrow's claim for *North Dakota* benefits. DeCrow in effect argues that the Full Faith and Credit Clause requires North Dakota, an exclusive remedy jurisdiction, to subordinate its statutory policy to the more generous supplemental benefits policy of another State, Colorado. Thomas does not support this contention. Indeed, the contention is contrary to the fundamental Full Faith and Credit Clause principle that a State need not "substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." Hyatt, 538 U.S. at 496; see Phillips Petrol. Co. v. Shutts, 472 U.S. 797, 818-19 (1988).

The judgment of the district court is affirmed.

_____